UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE:

BERNARD M. GUELIG and                      Case No. 06-C-1250
MARY J. GUELIG,

      Debtors/Appellants,                 (Bankruptcy Case No. 05-33634-MDM)

  v.

NEIL M. McCLOSKEY,

      Trustee/Appellee.

---

**DECISION AND ORDER AFFIRMING BANKRUPTCY COURT ORDER**

---

     Appellants Bernard M. Guelig and Mary J. Guelig appeal an order of the United States Bankruptcy Court for the Eastern District of Wisconsin, which permitted Neil M. McCloskey, the Chapter 7 trustee for the estate, to sell real property of the estate free and clear of all liens. Strange as it may seem, the Gueligs argue they owe *more* on the land contract than the bankruptcy judge decided they do. Appellants argue that if the allegedly proper, higher debt amount is used in the calculations, there is no equity for distribution to creditors, in which case it is improper to order sale of the property. Appellants further argue the bankruptcy judge abused her discretion in approving the sale when they had presented a credible offer to pay all claimants who were demanding payment. Appellee argues the bankruptcy judge's debt calculation was proper and that appellants' offer to pay claimants was inadequate and in bad faith, just as the bankruptcy court had concluded. For the following reasons, the order of the bankruptcy court will be affirmed.

## FACTUAL BACKGROUND

The Gueligs filed a Chapter 7 bankruptcy on August 17, 2005, and stated in the schedules that they had a land contract vendee's interest in a 218-acre farm. They listed the farm's value at $174,050 on the bankruptcy schedules, even though they had purchased it for roughly the same amount over 17 years earlier—more specifically, for $175,000 in January of 1987. (Appellee's Br. Ex. 7.) The Gueligs claim they derived their submitted valuation figure from real estate tax appraisals. The Gueligs' interest in the property was subject to the claim of the land contract vendor, Virginia Bittner, who is Mary Guelig's mother. Bittner also holds a life estate interest in the residence on the farm property.[1] Bittner desires that the Gueligs keep the property (and thereby keep it in the family) even though they have never made any payments to her. This case presents the somewhat odd scenario, then, of a secured creditor, that is, Bittner, who is not pressing to be paid.

The same cannot be said of Badgerland Farm Credit Services ("Badgerland"), who was trying to satisfy a 2003 judgment lien of roughly $78,000 on the property. Badgerland informed the trustee, Neil McCloskey, that the Gueligs had grossly understated the value of the farm. After consulting with a real estate broker, McCloskey asked the bankruptcy court for permission to sell the real estate and pay the creditors. The Gueligs objected, arguing that it was highly unlikely any equity would remain to satisfy creditors. Based on the testimony of two certified appraisers and an auctioneer, the bankruptcy court found that the real estate had a value of $700,000, that the Gueligs

---

[1] Appellants argue that Bittner has a life estate interest in the entire 218 acres, but the land contract clearly indicates that her life estate interest is only in the farm's residence: "The parties agree that the Vendor shall be entitled to reside at the residence located on the real estate described above so long as she desires." (Land Contract, Appellee's Br. Ex. 7.)

2

owed roughly $546,000 on the land contract, and that their homestead therefore had equity of approximately $154,000. (Mem. Decision of June 9, 2006, at 3-6, Dkt. #4 Pt. 5.) Subtracting from that amount the debtors' homestead exemption of $40,000 left about $114,000 of equity available to creditors. (*Id.* at 6.) In light of these findings, the bankruptcy court overruled the debtors' objection to the trustee's proposed sale of the property, and ordered them to cooperate with the trustee in the sale of their interest.[2] (*Id.*)

A court-approved broker soon found a buyer, and on September 18, 2006, McCloskey filed a motion for authority to sell, free and clear of all encumbrances, the 178 acres not used as a homestead; the buyer's offer was roughly $650,000.[3] (Dkt. #7 Pt. 3 at 2.) The judgment creditor, Badgerland, did not oppose the sale, while the Gueligs did. (*Id.*) After a motion hearing on October 18, 2006, Bankruptcy Judge Margaret Dee McGarity issued an order allowing the trustee to sell the 178 acres free and clear of liens for roughly $650,000, (Order of November 1, 2006, Dkt. #1 Pt. 3),[4] and an order granting interim compensation of roughly $39,000 to real estate broker Frank Adashun

---

[2] The Gueligs subsequently filed a motion to reconsider, which the bankruptcy court denied on July 18, 2006. They then filed in district court a motion for leave to appeal the reconsideration order, but the district court denied that motion on September 19, 2006, concluding that they had not raised a question of law within the meaning of the applicable statute, 28 U.S.C. § 1292(b). (District Court Decision and Order of September 19, 2006, at 4, Appellee's Br. Ex. 17.)

[3] For purposes of the sale, the property was divided into five parcels, four of which were offered for sale. The fifth parcel, which was not sold, comprises roughly 50 acres and the residence and outbuildings, and was valued by the broker at $220,000. (Appellee's Br. at 9; Dkt #10 Pt. 2 at 5-9.)

[4] The order also invalidated the remaining year of a lease to Allen Able, who was farming three of the four parcels to be sold, and any obligations to Wisconsin Power and Light connected with future leasing of the property for wind generators. Able opposed the proposed sale, while Wisconsin Power and Light favored it. (Order of November 1, 2006, at 2, Dkt. #1 Pt. 3; *see also* Transcript of Proceedings on October 18, 2006, at 13-14, 16, 32, 48-50, Dkt. #10 Pts. 2, 3.)

3

(Order of November 1, 2006, Dkt. #1 Pt. 2). Presently before the court is the Gueligs' appeal of those two orders.

The central issue in this appeal is the appropriate method of calculating interest under the land contract. The bankruptcy judge compounded interest up to the date of maturity of the land contract (January 29, 1996) and used simple interest thereafter. The Gueligs argue this was error and that interest should be compounded even beyond the maturity date. Of course, compounding the interest beyond the maturity date generates a much larger total owed to the land contract vendor, which in turn shrinks the equity in the property. According to the Gueligs, the equity is so low that the land contract vendor and unsecured creditors will not be paid in full, and in such a scenario the law does not permit authorization of the sale. The Gueligs also argue that the bankruptcy court abused its discretion in approving the sale when the debtors offered to pay all allowed administrative, judgment, and unsecured claims in full, and the only secured creditor (Bittner) opposed the sale.

## ANALYSIS

**I. Jurisdiction**

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders under 28 U.S.C. § 158(a). As a preliminary matter, I must determine whether this court has subject matter jurisdiction over this appeal. Federal district courts have jurisdiction to hear bankruptcy appeals

>   (1) from final judgments, orders, and decrees;
>   (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
>   (3) with leave of the court, from other interlocutory orders and decrees;

4

> and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a). Again, the Gueligs appeal two orders of the bankruptcy court: (1) the order of November 1, 2006, authorizing the trustee to sell property of the estate free and clear of liens and encumbrances under 11 U.S.C. § 363; and (2) the order of November 1, 2006, authorizing payment of interim compensation to real estate broker Frank Adashun in the amount of nearly $39,000. As to the latter, interim awards of compensation to professionals are interlocutory orders, for they are subject to the court's re-examination and adjustment during the course of the case, and must receive the court's final scrutiny and approval. *In re Callister*, 673 F.2d 305, 307 (10th Cir. 1982). Because the Gueligs have not sought leave to appeal the interim award of compensation to Adashun, this court is without jurisdiction to hear appeal of that interlocutory order.

The court does have jurisdiction over appeal of the order authorizing the sale, however, for an order authorizing sale of a debtor's estate property is a final, appealable order. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003); *In re Vlasik*, 325 F.3d 955, 961 (7th Cir. 2003); *In re Sax*, 796 F.2d 994, 998 (7th Cir.1986). Appellee argues that the Gueligs, in seeking appellate review of the sale order, are in essence seeking review of the bankruptcy court's interlocutory order that made findings as to the value of the property and the amount owed to the land contract vendor. True, the Gueligs' earlier motion to appeal that interlocutory order was denied by the district court, (District Court Decision and Order of September 19, 2006, Appellee's Br. Ex. 17), but at that time there was no final order authorizing sale of estate property. Now that such an order has been issued, the Gueligs may seek review of those earlier findings insofar as they form the basis of the final order authorizing the sale. To conclude otherwise would effectively immunize the bankruptcy court's findings from review.

5

**II. Calculation of interest**

Having determined that the court has appellate jurisdiction of the order authorizing sale of the estate property, I now move on to review that order. A reviewing federal court examines a bankruptcy court's conclusions of law *de novo*, but accepts the bankruptcy court's factual findings unless they are clearly erroneous. *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir. 1990); Fed. R. Bankr. P. 8013. As mentioned above, the main issue is how interest should be calculated under the language of the contract. Interpretation of contract terms is a question of law, *American Nat. Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215, 689 N.W.2d 922, 927 (Wis. Ct. App. 2004), and so I review *de novo* the bankruptcy court's interpretation of the contract language.

The land contract provides for monthly payments and states that "[f]ollowing any default in payment, interest shall accrue at the rate of 7% per annum on the entire amount in default (which shall include, without limitation, delinquent interest and, upon acceleration or maturity, the entire principal balance)." (Appellants' Br. at 8; Appellee's Br. Ex. 7.) The bankruptcy court interpreted this language to permit compound interest, but only up to the date of maturity:

> The first clause of the sentence provides for 7% interest, and it states two circumstances, written in the conjunctive, to which the interest applies. The first circumstance is for amounts in default, including accrued interest. Until the time of maturity, each monthly default would be accrued, and interest would be charged on the total amount, resulting in compound interest. The second circumstance to which the 7% interest charge applies is maturity. At that time, interest shall accrue at 7% on the entire principal balance. This includes principal, plus accrued interest on all installments in default. The use of the conjunctive indicates that the application of interest is different before and after maturity.

(June 9, 2006, Decision on Intent to Sell at 5; Dkt #4 Pt. 4.) As the bankruptcy court noted, under Wisconsin law simple interest applies in contract cases unless the contract specifies otherwise. Wis. Stat. § 138.05(1)(c) ("In the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear

6

interest, unless an agreement to that effect is clearly expressed in writing, and signed by the party to be charged therewith."); *see also Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 964 F.2d 694, 696 (7th Cir. 1992) (citations omitted); *W.G. Slugg Seed & Fertilizer, Inc. v. Paulsen Lumber, Inc.*, 214 N.W.2d 413, 418 (Wis. 1974).

In light of this authority, I conclude that the bankruptcy court correctly construed the interest provision in the land contract. To the extent the contract language can be read as permitting compound interest post-maturity, such a reading is not clearly expressed, but instead requires considerable linguistic gymnastics. Moreover, in order to compound the interest post-maturity, one would need to specify successive maturity dates in light of which "payment due" dates could be ascertained. Yet the contract specifies only one maturity date—January 29, 1996. Because the contract does not clearly specify that interest is to be compounded post-maturity, simple interest applies.

Compounding the interest as set forth above, the bankruptcy court found delinquent interest totaled $146,730.35 (June 9, 2006, Decision on Intent to Sell at 4, Dkt #4 Pt. 4.) The court then added this amount to the principal balance of $175,000, which resulted in $321,730.36 due at maturity. (*Id.*) The court then applied 7% simple interest to that total for the ten years since maturity (7% X $321,730.36 = $22,521.13/year X 10 years = 225,211.25), added that to the $321,730.36 due at maturity, and found that the total amount due under the land contract was $546,941.61. (*Id.* at 4-5.) Appellants contest those figures, arguing that the delinquent interest total is $151,933.78, and that the bankruptcy court failed to account for $839.59 of default interest (i.e., interest on the delinquent interest). But even if appellants are correct, the difference is not so substantial that it would affect the bankruptcy court's ultimate conclusion that the sale of the

7

property was reasonable. Delinquent interest of $151,993.78 and default interest of $839.59 results in $327,773.37 due at maturity and $557,567.67 as the total amount due under the land contract.

The bankruptcy court found that the property had a value of $700,000, and, after subtracting the $40,000 homestead exemption,[5] that about $114,000 in equity remained available to creditors, not considering Badgerland's judgment lien. (June 9, 2006, Decision on Intent to Sell at 3, 6, Dkt #4 Pt. 4.) The court deemed it premature to determine Badgerland's claim: "Whether Badgerland has a judgment lien, or the amount of the lien, may turn on later events, such as the sale price, determination of the claim, and whether the debtors receive a discharge." (*Id.* at 6.) The court did take note, however, of Badgerland's argument that its roughly $78,000 judgment lien, obtained in August of 2003, had increased in value to nearly $128,000 on account of interest and legal fees and costs incurred in enforcing its debt. (*Id.*) In light of its findings as to the value of the property and the amount of the land contract vendor's interest, the court determined there was value in the estate for creditors over and above administrative expenses and the vendor's interest, and therefore overruled the debtors' objection to the sale. (*Id.*)

If appellants' figures for delinquent and default interest had been used, the remaining equity would have been roughly $102,500 rather than $114,000. Thus, even if appellants are correct on this point, an issue they are free to raise in the bankruptcy court since the case remains pending, the relatively minor discrepancy provides no grounds to overturn the order for sale, for it does not change the conclusion that the estate had considerable value over and above administrative expenses and the amount of the vendor's claim.

---

[5] The bankruptcy court properly considered the homestead exemption under the assumption that the entire property would be sold. However, the real estate broker subsequently divided the property into five lots, *see* discussion *supra* note 3, and the trustee found it unnecessary to offer for sale the fifth lot that held the residence, farm buildings, and surrounding 52 acres. Therefore, the homestead exemption, which would apply only to that fifth lot, is irrelevant to the sale.

**III. Authorization of the sale**

The bankruptcy court authorized the sale under 11 U.S.C. § 363(f)(3). (Transcript of Proceedings on October 18, 2006, at 129, Dkt. #10 Pt. 4; *see also* Order of November 1, 2006, Dkt. #4 Pt. 18). This section of the bankruptcy code permits sale of estate property free and clear of any liens provided that the sale price surpasses the "aggregate value of all liens" on the property. 11 U.S.C. § 363(f)(3). Again, the trustee, through a real estate broker, had found a buyer willing to pay roughly $650,000 for four parcels of the property. Appellants argue that in light of Badgerland's claim, which at the time of the October 18, 2006, hearing had grown to roughly $150,000 (Transcript of Proceedings on October 18, 2006, at 112, Dkt. #10 Pt. 4), the sale price did not surpass the aggregate value of all liens. However, Badgerland explicitly agreed that its lien would shift from the property to the proceeds of the sale. (*Id.* at 125-26.) In authorizing the sale under § 363(f)(3), then, the bankruptcy court was correct not to count Badgerland's lien as a lien on the property. The sale price of $650,000 clearly exceeds the value of Bittner's lien even if the latter is recalculated as above to approximately $558,000, and even if one adds to that figure the roughly $17,000 in additional interest that had allegedly accrued since January of 2006 (the date used by the bankruptcy court when it determined the value of Bittner's lien). (*See* Appellants' Br. at 6.)

Appellants also argue that authorization of the sale under § 363(f)(3) was improper because all lien holders cannot be paid in full from the sale proceeds under the trustee's proposed distribution. Appellants misunderstand the applicable standard. It is not the case that section 363(f)(3) permits sale of estate property free and clear of any liens only when all lien holders can be paid in full; rather, it permits such sale only if "the price at which such property is to be sold is

9

greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3). That standard was satisfied here. Moreover, and as just explained, Badgerland's lien had shifted from the property to the sale proceeds, which means it was proper not to count that lien when determining the aggregate value of all liens on the property.

Appellants' related argument that Bittner's interest is not adequately protected in light of the trustee's proposed distribution rings hollow. The trustee proposed subordinating Bittner's claim to certain junior claims (e.g., administrative claims and Badgerland's claim), but that is a mere proposal. As the bankruptcy court noted, how the proceeds from the sale are eventually distributed is a separate matter from whether the sale price exceeds the aggregate value of all liens. (Transcript of Proceedings on October 18, 2006, at 119-20, Dkt. #10 Pt. 4.) Furthermore, Bittner's claim, to the extent it might not be fully satisfied under the proposed distribution, is protected by her collateral interest in the fifth parcel, valued at $220,000, which is not being sold.

**IV. Rejection of debtors' offer**

Appellants' remaining argument is that the bankruptcy court abused its discretion in authorizing the sale after they had presented a "credible offer" to pay all claims other than Bittner's through a loan from a neighboring farmer. (Appellants' Br. at 10-11.) The bankruptcy court rejected any such offer as not in the best interest of the estate, and also pointed to the Gueligs' bad faith throughout the bankruptcy proceeding. (Transcript of Proceedings on October 18, 2006, at 46-48, 123-127.) For example, the Gueligs drastically understated the value of the property, and failed to amend their estimate even after their own appraiser valued it at nearly $532,000. Furthermore, the court suspected the Gueligs' stated intention to pay off all bankruptcy creditors was

10

disingenuous, and that the Gueligs were angling to freeze out the trustee and Badgerland from any payments.[6] The record gives credence to such suspicions. One month prior to the October 2006 hearing, the Gueligs had managed to pay $13,000 to Home Town Bank, whose claim in the bankruptcy proceedings was a mere $224. (*Id.* at 124.) And the Gueligs' failure to make *any* payments to Bittner since 1987 belies their expressed intention to pay her in full. Finally, the Gueligs' insistence that they owed more than the bankruptcy court calculated, and that their property was worth much less than the court calculated—positions completely opposite to those one would expect in a debtor—strongly suggests they were attempting to manipulate the bankruptcy system in order to frustrate creditors. In short, the record more than supports the judge's decision to reject the Gueligs' last-minute offer as one made in bad faith, and instead to authorize the sale so that all creditors might be paid in orderly fashion and to the greatest extent possible.

## CONCLUSION

Although the bankruptcy court's calculation of the total amount the Gueligs owed under the land contract may be a little low, using the figures asserted by appellants does not change the outcome here. Authorization of the sale was proper, and the bankruptcy court did not abuse its discretion in rejecting the Gueligs' last-minute offer. As the bankruptcy court noted, it is lamentable that Bittner was ever talked into the land contract, but at the same time it is inescapable that contracts do have consequences. One cannot enjoy the benefit of a contract without meeting its

---

[6] The record suggests there was particularly bad blood between Bernard Guelig and Badgerland, as Guelig blamed Badgerland for pressuring him into taking out the loan that later precipitated the need to file for bankruptcy. (Transcript of Proceedings on October 18, 2006, at 64-66.)

11

burdens. In any event, the bankruptcy court's settlement of the Gueligs' bankruptcy seems most equitable, for it satisfies creditors, permits Bittner to remain in her residence, and allows the Gueligs to retain the acreage they themselves are farming.

The bankruptcy court's order authorizing the trustee to sell property of the estate free and clear of liens and encumbrances of any kind pursuant to 11 U.S.C. § 363 is therefore affirmed. The bankruptcy court's order authorizing the trustee to pay the real estate broker is not final. Since appellants have not sought leave to appeal that order, it is not properly before me and their appeal from that order is dismissed.

**SO ORDERED** this   3rd   day of April, 2007.

 s/ William C. Griesbach
 William C. Griesbach
 United States District Judge